1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

## JS-6

16
17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

18
19
20
21
22
23
24
25
26
27
28

ORANGE COUNTY COASTKEEPER, a
California non-profit association,

             Plaintiff,

      v.

NATIONAL CONSTRUCTION
RENTALS, INC., a California corporation,

         Defendant.

Case No.: 8:23-CV-01757-FWS-KES

**CONSENT DECREE**

# CONSENT DECREE

**WHEREAS,** Plaintiff Orange County Coastkeeper ("Coastkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Costa Mesa, California;

**WHEREAS,** the mission of Orange County Coastkeeper is to protect swimmable, drinkable, fishable water and promote watershed resilience throughout Orange County;

**WHEREAS**, Defendant National Construction Rentals, Inc., ("Defendant") leases and operates a facility at 1550 East Chestnut Avenue, Santa Ana, CA 92701 (the "Facility");

**WHEREAS**, the Facility's industrial activities consist of vehicle maintenance, vehicle fueling, and equipment cleaning operations and maintenance. The Facility is categorized under Standard Industrial Classification ("SIC") Code 4213, covering trucking with vehicle maintenance.

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring

implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

WHEREAS, on July 19, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director of the Regional Water Quality Control Board, Santa Ana Region ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ at the Facility;

WHEREAS, on September 18, 2023, Orange County Coastkeeper filed a complaint against Defendant in the Central District of California, Civil Case No. 8:23-CV-01757-FWS-KES (the "Complaint");

WHEREAS, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including the Santa Ana-Santa Fe Channel, which flows into the Peters Canyon Channel/Wash, which flows into Reach 1 of San Diego Creek, which flows into Newport Bay, which discharges into the Pacific Ocean (collectively, the "Receiving Waters");

WHEREAS, Plaintiff and Defendant (together, the "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree

setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings; and

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4. Orange County Coastkeeper has standing to bring this action.

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.  OBJECTIVES**

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by Orange County Coastkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

8. <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (together, the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier (the "Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9. <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10. <u>Entry of Consent Decree</u>. Promptly following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. DEFINITIONS

11. Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules.

Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a.    "BAT" means the Best Available Technology Economically Achievable.

    b.    "BCT" means the Best Conventional Treatment Technology.

    c.    "BMPs" means Best Management Practices.

    d.    "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

    e.    "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

    f.    "Discharge Point" means each outfall and discharge location designated in the operative SWPPP for the Facility.

    g.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

    h.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

    i.    "Forecasted Rain Event" means a rain event with greater than 25% probability of precipitation above 0.1 inches as predicted by the National Oceanic and Atmospheric Administration.

    j.    "MIP" means a Monitoring Implementation Plan.

    k.    "PPT" means Pollution Prevention Team.

    l.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

m.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

n.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p.    "SWPPP" means a Storm Water Pollution Prevention Plan.

q.    "Term" means the period between the Effective Date and the "Termination Date."

r.    "Termination Date" means the latest of:

  i.    June 30 following two (2) years from the Effective Date;

  ii.   seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to June 30 following two (2) years after the Effective Date; or

  iii.  In the event an Action Plan (as hereinafter defined) is required per paragraph 22 below based on sampling results from the 2025-2026 reporting year, one (1) year following complete implementation of the measures described in the Action Plan.

## III.    COMMITMENTS OF THE SETTLING PARTIES

### A.    STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13. <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the General Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan." Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14. <u>Structural and Non-Structural BMPs for the Facility</u>: Within sixty (60) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

      a.    Employ a combination of Industrial Blend and Advanced Blend Filtrexx Envirosoxx pollutant filter socks in a series of concentric half-circles in front of the Facility's two discharge locations. The socks shall be placed in a manner and sufficiently weighted down such that they will make appreciable contact with all storm water flows;

      b.    As necessary, replace the filtration socks at the Discharge Points when degraded or ineffective as determined and documented by visual observations and monitoring data;

      c.    Permanently remove outlet caps and/or covers at the Discharge Points;

d.    Conduct weekly sweeping at the Facility;

e.    Maintain a log recording details of sweeping at the Facility including the time, date, method and name of the on-site staff person who conducted the sweeping or the supervisor during the sweeping;

f.    Maintain practice of cutting back excessive vegetation from the perimeter walls in order to keep the brush from creeping over the lip of the walls;

g.    Within twenty-four (24) hours prior to a Forecasted Rain Event, use commercially reasonable efforts to close or otherwise cover all roll-off bins and dumpsters with tarps as necessary to prevent exposure to rainfall;

h.    Institute a formal pre-rain protocol to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and filtration socks deployed at the site, removal of any exposed waste material, and covering and/or relocation of uncontained or uncovered debris bins and trash cans under cover;

i.    Institute an equipment and vehicle maintenance program that ensures:

      i.  No maintenance activities that may result in a discharge of pollutants to stormwater occur during a rain event, unless such maintenance is required for safe operation of the Facility, (*e.g.*, the forklift breaks down in a location that prevents ingress/egress);

      ii.  When maintenance activities must be performed outdoors, action shall be taken to immediately contain, capture, and

1    clean up any discharge or spills of waste fluids to the

2    ground; and

3    j.    Within ten (10) days of implementation of BMPs 14(a) and 14(c),

4    Defendant shall confirm to Coastkeeper in writing, with

5    photographs, that such BMP has been implemented as set forth

6    above.

7    **B.    SAMPLING AT THE FACILITY**

8    15.    Defendant shall develop a monitoring program consistent with the

9    General Permit. During the Term, Defendant shall collect samples of storm water

10    discharge from each Discharge Point from at least four (4) Qualifying Storm Events

11    per Reporting Year. Such sampling shall take place as soon as possible within the

12    four (4) hour period required by the General Permit § XI.B.5. Any failure or inability

13    to collect samples as required by this Consent Decree, including without limitation as

14    a result of insufficient discharge, shall be documented, including by taking

15    photographs of the Discharge Point, and submitted to Coastkeeper by email, for the

16    date when the sample should have been collected but was not, within ten (10) days of

17    a written request for such records by Coastkeeper.

18    16.    Sampling Parameters: All samples collected pursuant to this Consent

19    Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should

20    Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R.

21    § 131.38 and/or in the General Permit for any reason, including without limitation as

22    a result of changed operations or a revised pollutant source assessment, such

23    parameter shall be treated as if listed in Table 1 for the purposes of this Consent

24    Decree, including the action plan requirements below, and the Parties shall meet and

25    confer regarding the applicable Table 1 limit for such purposes.

26    17.    Laboratory and Holding Time: Except for pH samples, Defendant shall

27    cause delivery of all samples to a California state certified environmental laboratory

28

for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions. During the Term, Defendant shall exclusively use a calibrated portable instrument for measuring pH in accordance with the manufacturer's instructions and shall not use wide range litmus pH paper or other equivalent.

18.     <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

19.     <u>Reporting</u>: Defendant shall upload complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall either email Coastkeeper with notification of said upload provide copies of said results to Coastkeeper within ten (10) days of receiving the laboratory report with the results.

C.     **REDUCTION OF POLLUTANTS IN DISCHARGES**

20.     Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| pH | 6.5 - 8.5 | Basin Plan |
| Zn | 0.21 mg/L | Instantaneous NEL (Attachment "F" of Permit) |
| TSS | 100 mg/L | Annual NAL (Table 2 of Permit) |
| Al | 0.75 mg/L | Annual NAL (Table 2 of Permit) |
| N+N | 0.68 mg/L | Annual NAL (Table 2 of Permit) |
| Fe | 1.0 mg/L | Annual NAL (Table 2 of IGP) |
| BOD | 30 mg/L | Annual NAL (Table 2 of Permit) |

21.  Table 1 Exceedances. An "Exceedance" of Table 1 is defined as follows: where the average concentration of any pollutant in all storm water samples during a particular reporting year from a particular outfall from the Facility exceeds any numeric limit contained in Table 1.

22.  Action Plan for Table 1 Exceedances: As of the Effective Date, and for the remainder of the Term, if Defendant's storm water samples demonstrate an Exceedance of Table 1 as defined above, or an exceedance of the General Permit (i.e. an exceedance of the annual NALs, instantaneous maximum NALs, or instantaneous maximum NELs), Defendant shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility ("Action Plan"). The complete Action Plan shall be submitted to Coastkeeper by July 31 of each year of the Term, as applicable.

a.  Action Plan Requirements. Each complete Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s); (2) an

11

CONSENT DECREE

assessment of the source of each contaminant exceedance and/or applicable; (3) the identification of additional BMPs that shall be implemented to achieve compliance with the numeric limit(s), as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than November 1 following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of all of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to Coastkeeper in writing, with photographs (as appropriate), that such BMPs have been implemented as set forth in the Action Plan.

b. <u>Action Plan Proposed BMPs</u>: The following BMPs should generally be evaluated, if appropriate, for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

i. <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

ii. <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

iii. <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, an advanced storm water

treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

iv.    Evaluation of Existing BMPs:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

v.    Advanced BMPs: Implementing aboveground or belowground stormwater retention/infiltration facilities, treatment, or any combination of the foregoing sufficient to treat and/or retain not less than the eighty-fifth (85th) percentile storm at the Facility (collectively, "Advanced BMPs").

c.    Action Plan Review: Coastkeeper shall have thirty (30) days upon receipt of Defendant's complete Action Plan to provide Defendant with comments. Within thirty (30) days of receiving Coastkeeper's proposed revisions to an Action Plan, Defendant shall consider each of Coastkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below. Disputes regarding

1    the adequacy of a particular BMP shall not impact the schedule for
2    implementing any other BMP set forth in the Action Plan.

3    d.    Defendant shall revise the then-current SWPPP to reflect the
4          changes required by the Action Plan, as set forth in Paragraph 28
5          below.

6    e.    Action Plan Payments: Defendant shall pay reasonable attorney
7          and consultant fees actually incurred by Coastkeeper in reviewing
8          the Action Plan and based on invoices to be provided by
9          Coastkeeper to Defendant in an amount not to exceed Five
10         Thousand Dollars ($5,000.00), each time an Action Plan is
11         submitted to Coastkeeper at the same time that the Action Plan is
12         submitted. Within fifteen (15) days of a submission of said
13         invoices, payments shall be made to "Orange County
14         Coastkeeper" via certified mail, return receipt requested to Orange
15         County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa
16         Mesa, CA 92626. Failure to submit a payment as required under
17         this Paragraph will constitute a breach of the Consent Decree.

18   **D.   VISUAL OBSERVATIONS**

19   23.   Additional Monitoring Regarding Potential Offsite Discharges:

20   a.    To verify that there are no offsite discharges from the entrance to
21         the Facility to S. Lyon St., during two continuous rain events
22         during the first twelve (12) months of the Term having produced
23         at least 1.0" of rain at the time of the observation, Defendant shall
24         take sufficient video(s) of the entire area of said entrance. To the
25         extent that the Defendant is unable to observe said rains during the
26         first twelve (12) months, or if said rains do not occur, Defendant

27
28

14

shall continue monitoring during the Term until it conducts the
required observation from two requisite rain events.

    b.    Within fourteen (14) days of each rain event, Defendant shall
provide Plaintiff with a copy of the video(s) as well as an hourly
record from a rain gauge at the Facility to verify the amount of
rain from the rain at the time of observation.

    c.    If there are any offsite discharges from the entrance, Defendant
shall either implement new BMPs to eliminate said discharges or
shall revise the Facility's SWPPP and Monitoring Program to
include said Discharge Point.

24.    <u>Storm Water Discharge Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during: (i) at least four QSEs as required by Section XI.A.2 of the General Permit and (ii) two (2) additional rain events. Such inspections shall comply with all applicable requirements of Section XI.A.2 of the General Permit, and any successor thereof.

25.    <u>Monthly Visual Observations</u>: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. Such inspections shall further include observations of all storm water BMPs that are used at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or

working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

26.    Visual Observations Records: Defendant shall maintain observation records, including photographs (where appropriate), to document compliance with Paragraphs 23, 24 and 25. Such records shall include, but not be limited to, the person(s) who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in an adequate condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide Coastkeeper with a copy of those records within ten (10) days of receipt of a written request from Coastkeeper for those records.

27.    Employee Training Program: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility tasked with materially implementing the compliance activities of the General Permit, the Facility's SWPPP and Monitoring Program, and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit, the Facility's SWPPP and Monitoring Program, and this Consent Decree ("Training Program"):

      a.    Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use

by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.   <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c.   Training shall be provided annually by a QISP and, if training is required more than annually, a QISP or other Designated Employee previously trained by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d.   <u>Sampling Training</u>: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e.   <u>Visual Observation Training</u>: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f.   <u>Non-Storm Water Discharge Training</u>: Defendant shall train all Designated Employees at the Facility on the General Permit's

prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. <u>Employees</u>: All Designated Employees at the Facility shall participate in the QISP-led Training Program annually or more frequently as needed to comply with this Consent Decree and/or the General Permit. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date if their employment begins during the period from October 1 – April 30, and within sixty (60) days at all other times; and

h. Defendant shall maintain training records to document compliance with this Paragraph and shall provide Coastkeeper with a copy of these records within ten (10) days of receipt of a written request.

28. <u>SWPPP Revisions</u>:

a. <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to Coastkeeper within sixty (60) days of the Effective Date for Coastkeeper's review and comment pursuant to Paragraph 28(c) below.  The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.    A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.    Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.    A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.    A MIP as required by sections XI and X.I of the General Permit;

vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.    A Training Program as described above at Paragraph 27.

b.    <u>Additional SWPPP Revisions</u>:

i.    Within thirty (30) days after approval of any Action Plan by Coastkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to Coastkeeper for review and comment pursuant to Paragraph 28(c) below.

ii.    Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or other Facility changes requiring a

19

CONSENT DECREE

SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to Coastkeeper review and comment pursuant to Paragraph 28(c) below.

c.   Review of SWPPP:  For any SWPPP updates pursuant to Paragraph 28 above, Coastkeeper shall have thirty (30) days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within thirty (30) days of receiving Coastkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

E.   **COMPLIANCE MONITORING AND REPORTING**

29.   Every Reporting Year during the Term, Coastkeeper may conduct up to two annual site inspections ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to

meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, the additional Site Inspection. Any Site Inspection shall occur during normal business hours, and Coastkeeper will provide Defendant with at least seventy-two (72) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 57. During the wet weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial Discharge Point(s), to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to Coastkeeper. Coastkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. Coastkeeper shall be permitted to take photographs or video recordings during any Site Inspection.

      30.    <u>Document Provision</u>. During the Term, Defendant shall notify and/or submit documents to Coastkeeper as follows:

          a.    Defendant shall copy Coastkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

          b.    Within seven (7) business days of receipt by Defendant, Defendant shall send to Coastkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility

1   received by Defendant from the Regional Board, the State Board,

2   and/or any state or local agency, county, municipality. Defendant

3   shall mail paper copies or email electronic copies of documents to

4   Coastkeeper at the relevant notice address contained below.

5       31.   <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs

6   associated with Plaintiff's monitoring of Defendant's compliance with this Consent

7   Decree during the Term by paying Ten Thousand Dollars ($10,000.00).  In the event

8   that there is an additional Site Inspection beyond the potential twice annual Site

9   Inspection contemplated herein in a given year to resolve a dispute pursuant to

10  Paragraph 29, Defendant shall reimburse Coastkeeper for any reasonable attorney and

11  consultant fees actually incurred by Coastkeeper to perform an additional Site

12  Inspection, based on invoices to be provided by Coastkeeper to Defendant, and in an

13  amount not to exceed Five Thousand Dollars ($5,000.00) during such year. Payment

14  shall be made within thirty (30) days of the Entry Date, and within thirty (30) days

15  after Coastkeeper provides Defendant with invoices for any additional Site

16  Inspection, as applicable. The payment shall be made via check, made payable to:

17  "Orange County Coastkeeper" via certified mail, return receipt requested to Orange

18  County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

19  Failure to submit payment as required under this Paragraph will constitute breach of

20  the Consent Decree.

21      F.   **ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS,**

22          **STIPULATED PENALTIES, AND INTEREST**

23      32.   <u>Environmental Mitigation Project</u>: To fund environmental project

24  activities that will reduce or mitigate the impacts of storm water pollution from

25  industrial activities occurring in and around San Diego Creek and Newport Bay,

26  Defendant agrees to make a payment totaling Thirty Thousand Dollars ($30,000.00)

27  to the Wetlands and Wildlife Care Center made within thirty (30) days of the Entry

28

Date, payable to the Wetlands and Wildlife Care Center and sent via overnight mail to Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington Beach, CA 92646. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

33.     Coastkeeper's Fees and Costs: Defendant agrees to pay a total of Ninety-Five Thousand Dollars ($95,000.00) to Coastkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to Orange County Coastkeeper and delivered by certified mail or overnight carrier to: Orange County Coastkeeper, 3151 Airway Ave., Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.     Stipulated Payment. In the event that Defendant fails to submit to Coastkeeper any payment, document, report, or communication required by this Consent Decree, Coastkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have five (5) business days from receipt of such notice to respond to Coastkeeper, and if necessary, cure such delinquency. If Defendant fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Coastkeeper's notice, then Defendant shall make a stipulated payment of One Hundred Dollars ($100) per day, upon timely request by Coastkeeper. Such stipulated payments shall be made by check payable to: Wetlands and Wildlife Care Center, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 32. Payment shall be sent via overnight mail to Wetlands and Wildlife Care Center, 21900 Pacific Coast Highway, Huntington Beach, CA 92646. Defendant agrees to make the

1  stipulated payment within thirty (30) days after the resolution of the event that

2  precipitated the stipulated payment liability.

3       35.   <u>Interest on Late Payments</u>: Upon request by Coastkeeper, Defendant

4  shall pay interest on any payments, fees, or costs owed pursuant to this Consent

5  Decree that are not received by the due date. The interest shall accrue starting the

6  next business day after the payment is due and shall be computed at a rate equal to

7  the lower of: (i) 7% per year (0.583% per month); or (ii) the maximum rate permitted

8  by applicable law. Interest shall continue to accrue daily on any outstanding balance

9  until Defendant is current on all payments then due under this Consent Decree, and

10  shall be paid at the same time that the payments, fees, or costs owed are paid to

11  Coastkeeper. Interest on late payments shall be paid by check payable to: Wetlands

12  and Wildlife Care Center, and such funds shall be used for the sole purpose of

13  funding environmentally beneficial projects, as described in Paragraph 32. Payment

14  shall be sent via overnight mail to: Wetlands and Wildlife Care Center, 21900 Pacific

15  Coast Highway, Huntington Beach, CA 92646.

16  **IV.   DISPUTE RESOLUTION**

17       36.   This Court shall retain jurisdiction over this matter for the Term for the

18  purposes of enforcing its terms and conditions, and adjudicating all disputes among

19  the Parties that may arise under the provisions of this Consent Decree. The Court

20  shall have the power to enforce this Consent Decree with all available legal and

21  equitable remedies, including contempt.

22       37.   <u>Meet and Confer</u>. Either party to this Consent Decree may invoke the

23  dispute resolution procedures of this Section IV by notifying the other party in

24  writing of the matter(s) in dispute and of the disputing party's proposal for resolution.

25  The Parties shall then meet and confer in good faith (either telephonically or in

26  person) within ten (10) days of the date of the notice in an attempt to fully resolve the

27  dispute no later than thirty (30) days from the date of the notice.

28

38.   <u>Conference with Magistrate</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 37 above, unless otherwise extended by mutual agreement, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

39.   In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

## V.   MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

40.   <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

41.   <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.   Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an

1 informal or formal proceeding before the State Board, Regional Board, EPA, or any

2 other judicial or administrative body on any matter relating to Defendant's

3 compliance at the Facility with the General Permit or the Clean Water Act occurring

4 or arising after the Effective Date.

5 **VI.    MISCELLANEOUS PROVISIONS**

6      43.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree

7 for the purpose of avoiding prolonged and costly litigation. Neither the Consent

8 Decree nor any payment pursuant to the Consent Decree shall constitute or be

9 construed as a finding, adjudication, or acknowledgement of any fact, law or liability,

10 nor shall it be construed as an admission of violation of any law, rule, or regulation.

11 Defendant maintains and reserves all defenses it may have to any alleged violations

12 that may be raised in the future.

13      44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of

14 counterparts, all of which together shall constitute one original document.  Telecopy

15 and/or facsimile copies of original signature shall be deemed to be originally

16 executed counterparts of this Consent Decree.

17      45.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant

18 each certify that s/he is fully authorized by the party whom s/he represents to enter

19 into this Consent Decree. A Party's signature to this Consent Decree transmitted by

20 facsimile or electronic mail shall be deemed binding.

21      46.    <u>Construction</u>. The language in all parts of this Consent Decree shall be

22 construed according to its plain and ordinary meaning, except as to those terms

23 defined in the Permit, the Clean Water Act, or specifically herein. The captions and

24 paragraph headings used in this Consent Decree are for reference only and shall not

25 affect the construction of this Consent Decree.

26      47.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final

27 settlement of this matter.

28

48.     Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

49.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

50.     Choice of Law. The laws of the United States shall govern this Consent Decree.

51.     Diligence: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

52.     Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

53.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

54.     Modification of the Consent Decree. This Consent Decree, and any material provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

55.     <u>Assignment</u>. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a National Construction Rentals transferee or assign ("NCR Assignee") will continue industrial operations at the Facility, National Construction Rentals shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, National Construction Rentals will provide Coastkeeper with a written assignment and assumption duly executed by National Construction Rentals and the National Construction Rentals Assignee assigning National Construction Rental's obligations under this Consent Decree to the Assignee.

56.     <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather (adjudged from the baseline of the Facility's average weather), economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome

1  the failure of performance. The Parties shall exercise due diligence to resolve and

2  remove any Force Majeure event.

3        57.   Correspondence. All notices required herein or any other correspondence

4  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

5  transmission to the e-mail address listed below, or if electronic mail is not feasible,

6  then by certified U.S. mail with return receipt, or by hand delivery to the following

7  addresses:

8  | If to Plaintiff: | If to Defendant: |
| --- | --- |
| Barry Lee | Jim Mooneyham |
| Email: barry@coastkeeper.org | c/o Adam J. Soibelman |
| ORANGE COUNTY | Email: asoibelman@r2lawgroup.com |
| COASTKEEPER | R2 LAW GROUP, LLP |
| 3151 Airway Avenue, Suite F-110 | 23901 Calabasas Road, Suite 2006 |
| Costa Mesa, CA 92626 | Calabasas, CA 91302 |
| Phone: (714) 850-1965 | Phone: (818) 436-0769 |
| | |
| With copies to: | With copies to: |
| Douglas Chermak | Pete Nyquist |
| Email: doug@lozeaudrury.com | Sherry Jackman |
| LOZEAU DRURY | Emails: |
| 1939 Harrison Street, Suite 150 | pnyquist@greenbergglusker.com |
| Oakland, CA 94612 | sjackman@greenbergglusker.com |
| Phone: (510) 836-4200 | GREENBERG GLUSKER LLP |
| | 2049 Century Park East, Suite 2600 |
| | Los Angeles, CA 90067 |
| | Phone: (310) 553-3610 |

23  Notifications of communications shall be deemed submitted three (3) days after the

24  date that they are postmarked and sent by first-class mail, or immediately after

25  acknowledgement of receipt via email by the receiving party. Any change of address

26  or addresses shall be communicated in the manner described above for giving notices.

27        58.   If for any reason the Federal Agencies should object to entry of this

28  Consent Decree or to any portion of this Consent Decree or the District Court should

decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:        February 2, 2024        By: _____
                                           Garry Brown
                                           Executive Director
                                           Orange County Coastkeeper

Dated: ___2024-02-03___, 2024        By: _____
                                           Jim Mooneyham
                                           President National Construction
                                           Rentals, Inc.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

 Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: March 4, 2024    CENTRAL DISTRICT OF CALIFORNIA

_____
HONORABLE Fred W. Slaughter
United States District Court Judge